# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

| | | |
|---|---|---|
| CAMERON SCHWEITZER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| HERTZ GLOBAL HOLDINGS, INC., WAYNE GILBERT WEST, and SCOTT M. HARALSON, | ) ) ) ) ) | |
| Defendants. | ) ) | DEMAND FOR A JURY TRIAL |

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Cameron Schweitzer ("Plaintiff"), on behalf of himself and all others similarly situated, by and through Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings of Hertz Global Holdings, Inc. ("Hertz" or the "Company"), the Company's press releases, analyst reports, media reports, and other publicly disclosed information about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of Hertz Global Holdings, Inc. ("Hertz") between May 7, 2026 and June 23, 2026, inclusive ("Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "1934 Act"), against Hertz, Wayne Gilbert West, and Scott M. Haralson (collectively, "Defendants").

2.      Plaintiff brings this federal class action under Sections 10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

## JURISDICTION AND VENUE

3.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act, 15 U.S.C. §78aa.

4.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), and §27 of the 1934 Act, because certain of the events or omissions giving rise to the claim occurred in this District, including the dissemination of the statements alleged to be materially false and misleading into this District. Hertz's corporate headquarters are also located in this District.

5.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

6.     Plaintiff Cameron Schweitzer, as set forth in the accompanying Certification incorporated by reference herein, purchased Hertz common stock during the Class Period and has been damaged thereby.

7.     Defendant Hertz is a global vehicle rental and mobility solutions provider headquartered in Estero, Florida. Hertz common stock trades on the Nasdaq stock market under the ticker symbol "HTZ."

8.     Defendant Wayne Gilbert ("Gil") West has served as Hertz's Chief Executive Officer ("CEO") and a member of the Company's board of directors since April 2024. During the Class Period, defendant West was responsible for the issuance of false and misleading statements and omissions about Hertz and failed to disclose the true facts about the Company's business, operations, and liquidity position.  In addition to issuing false and misleading statements throughout the Class Period, West had the opportunity to correct the misstatements and omissions by and on behalf of Hertz and failed to do so.

9.     Defendant Scott M. Haralson has served as the Company's Executive Vice President and Chief Financial Officer ("CFO") since June 2024. During the Class Period, defendant Haralson was responsible for the issuance of false and misleading statements and omissions about Hertz and failed to disclose the true

facts about the Company's business, operations, and liquidity position. In addition to issuing false and misleading statements throughout the Class Period, Haralson had the opportunity to correct the misstatements and omissions by and on behalf of Hertz and failed to do so.

10.    Defendants West and Haralson, because of their positions with the Company, possessed the power and authority to control the contents of Hertz's public statements, including the Company's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and individual and institutional investors. They were provided with copies of the Company's results, reports and press releases alleged herein to be false and misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, these Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.

### BACKGROUND

11.    Hertz is one of the largest vehicle rental companies in the world, operating through its wholly owned principal subsidiary, The Hertz Corporation. It rents cars and light trucks to leisure and business travelers under the Hertz, Dollar, Thrifty, and Firefly brands at more than 11,000 airport and off-airport locations across roughly 160 countries. Beyond its rental business, the Company sells its used vehicles through Hertz Car Sales and runs various car-sharing services and mobility platforms. The economics of the business turn on the fleet. Hertz buys hundreds of thousands of vehicles, finances most of them through asset-backed securitizations, and depends on reselling them into the used-car

market at prices that hold up. That makes residual values and depreciation per unit central to whether the Company is profitable.

12.    Hertz's current structure was forged in bankruptcy: in May 2020, after the COVID-19 pandemic froze travel in early 2020 and crushed both rental demand and used-car values, Hertz filed for Chapter 11. Hertz's bankruptcy was one of the highest-profile corporate collapses of the pandemic and the subject of an unusual, SEC-scrutinized attempt to sell new stock to retail "meme" investors while still in bankruptcy. It emerged on June 30, 2021, and the reorganized Company then bet heavily on electric vehicles, ordering roughly 100,000 Teslas, a wager that backfired as EV values fell and repair costs rose, forcing large fleet write-downs. By 2025, activist investor Pershing Square had taken a roughly 20 percent stake and management had launched a "Back-to-Basics" turnaround built around fleet discipline and cost control, the backdrop against which the Class Period events unfolded.

## MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS ISSUED DURING THE CLASS PERIOD

13.    The Class Period begins on May 7, 2026. Before the market opened, Hertz issued a release announcing the Company's Q1 2026 financial and operating results on Form 8-K, highlighting the Company's "Strongest Revenue Growth in Three Years" and emphasizing its improved DPU metrics and solid liquidity and capital position:

- "Net Depreciation per Unit per Month (Net DPU) was $312 in in [sic] the first quarter, approaching the Company's North Star target and representing a year-over-year improvement of 13%, supported by disciplined fleet rotation. The used car market was in the seasonal trough through February, but has since improved considerably."

- "Hertz ended the first quarter with approximately $837 million of liquidity and in April completed additional financing that added approximately $200 million."

- 4 -

14.     Hertz further addressed its Q1 2026 financial and operating results, explaining:

> Through its "Back-to-Basics" strategy, the Company is delivering measurable progress in its core rental operations with a focus on disciplined fleet management, revenue optimization, and rigorous cost control, all guided by its North Star metrics of DPU sub $300, RPU over $1,500, and DOE per Transaction Day in the low $30s.
>
> In the first quarter, the Company delivered sequential improvements through its "Buy Right, Hold Right, Sell Right" strategy with its youngest fleet in nearly a decade. Hertz achieved revenue of $2.0 billion in the first quarter, up 11% year over year and marking its strongest revenue growth in three years through continued, structural improvements to its commercial strategies. The Company drove sequential, year-over-year improvement in RPU and RPD, with RPD delivering a 5.5% increase, which was its most significant year-over-year improvement since the travel recovery and microchip-driven spike in 2022. These results, along with the progress towards the Company's North Star DPU target and continued implementation of cost management initiatives, resulted in an Adjusted Corporate EBITDA improvement of nearly 50% year over year.

15.     That same day, Hertz hosted an earnings conference call with analysts and investors to discuss the Q1 2026 results hosted by West and Haralson. In his prepared remarks, Haralson described Hertz's strong liquidity position explaining:

> Turning to liquidity, we ended the quarter with $837 million, which includes cash and cash equivalents and the available capacity under our revolving credit facility. In April, we completed an additional ABS financing that added $200 million of liquidity in the second quarter. With other liquidity enhancements planned, *we expect to end the second quarter with just under $1 billion and look to end the year at north of $1.5 billion*.

16.     The next day, May 8, 2026, the Company filed its Form 10-Q for Q1 2026, for the period ended March 31, 2026. The Form 10-Q was signed by CFO Haralson and certified by Haralson and CEO West who attested to the report's accuracy and material completeness. The Form 10-Q contained the same financial

information regarding Hertz's DPU and liquidity positions contained in the Q1 2026 release. The Form 10-Q further stated that the Company's cash, liquidity facilities, and refinancing options "*will be sufficient to fund our operating activities and obligations for the next twelve months and for the foreseeable future thereafter.*"

17.     Defendants' statements referenced above in ¶¶13-16 were materially false and/or misleading when made because they failed to disclose the following adverse facts pertaining to the Company's business, operations, and financial condition, which were known to defendants or recklessly disregarded by them as follows:

(a)     Hertz's liquidity was deteriorating far more rapidly than represented, and the Company's available liquidity was not sufficient to fund its operations and obligations for the next twelve months without resorting to a distressed, dilutive financing;

(b)     the softness in the used-car market that Defendants had characterized as "isolated to the quarter" and "transitory" had in fact recurred and was materially depressing the Company's net depreciation per unit ("DPU") and Adjusted Corporate EBITDA;

(c)     as a result of the foregoing, the Company was likely to undertake a dilutive, distressed capital raise that would materially harm existing shareholders; and

(d)     as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and liquidity position were materially false and misleading and lacked a reasonable basis at all relevant times.

18.     On June 24, 2026, before the market opened, and just weeks after assuring investors that the Company's liquidity would be "sufficient to fund our operating activities and obligations for the next twelve months and for the foreseeable future thereafter" and projected year-end liquidity "north of $1.5

billion," Hertz announced a massive dilutive capital raise. Through its wholly-owned indirect subsidiary, Hertz intended to offer $300 million of Exchangeable Senior First-Lien Secured PIK Notes due 2030, together with a concurrent share-lending offering of more than 37 million shares of common stock from which the Company would receive no proceeds, and simultaneously disclosed that "unexpected softness in the used car market" had caused losses on the sale of vehicles in May 2026 and would drive second-quarter Adjusted Corporate EBITDA down to a range of just $50 million to $80 million.

19. Investors were shocked. And on this news, the price of Hertz's common stock declined more than 40% to close at $3.00 per share on June 24, 2026.

20. The very next day, the offering priced on still more dilutive terms, upsized to $350 million (up to $400 million) at a 6.75% coupon with an exchange price of approximately $3.58 per share, and with the borrowed common stock sold to the public at just $2.70 per share.

21. As a result of the revelations detailed herein undermining defendants' Class Period representations, Plaintiff and the Class have suffered significant financial losses and economic damages under the federal securities laws.

## ADDITIONAL SCIENTER ALLEGATIONS

22. As alleged herein, defendants acted with scienter in that defendants knew, or recklessly disregarded, that the public documents and statements they issued and disseminated during the Class Period to the investing public in the name of the Company, or in their own name, were materially false and misleading. Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as primary violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding Hertz, and their control over and/or receipt

and/or modification of Hertz's allegedly materially misleading misstatements, were active and culpable participants in the fraudulent scheme alleged herein.

23.    Defendants knew and/or recklessly disregarded the false and misleading nature of the information they caused to be disseminated to the investing public. Accordingly, the fraud described herein could not have been perpetrated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company, including the Individual Defendants.

24.    The Individual Defendants, because of their positions with Hertz, controlled the contents of Hertz's public statements during the Class Period. The Individual Defendants were each provided with or had access to the information alleged herein to be false and/or misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause it to be corrected. Because of their positions and access to material, nonpublic information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, each of the defendants is responsible for the accuracy of Hertz's corporate statements and is, therefore, responsible and liable for the representations contained therein.

## CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action as a class action on behalf of a class consisting of all persons who purchased Hertz common stock during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers, directors, and affiliates of defendants, at all relevant times, and members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

- 8 -

26.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, shares of Hertz common stock were actively traded on the Nasdaq. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Hertz or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

27.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct, in violation of federal law as complained of herein.

28.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

29.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether defendants' statements during the Class Period were false and misleading;

(b)     whether defendants' false and misleading statements during the Class Period were material;

(c)     whether defendants acted with scienter in issuing materially false and misleading statements during the Class Period; and

(d)     the extent of injuries sustained by the members of the Class and the appropriate measure of damages.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## LOSS CAUSATION

31.     During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Hertz common stock and operated as a fraud or deceit on Class Period purchasers of Hertz common stock by failing to disclose and misrepresenting the adverse facts detailed herein. When defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Hertz common stock declined significantly as the prior artificial inflation came out of the price of the stock, as detailed herein. As result of their purchases of Hertz common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, i.e., damages, under the federal securities laws.

## APPLICATION OF THE PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

32.     At all relevant times, the market for Hertz common stock was an efficient market for the following reasons, among others:

(a)     Hertz common stock met the requirements for listing and was listed and actively traded on the Nasdaq, a highly efficient, national stock market;

(b)     as a regulated issuer, Hertz filed periodic public reports with the SEC;

(c)     according to the Company's Form 10-Q for the fiscal quarter ended March 31, 2026, filed with the SEC on May 8, 2026, Hertz had over 315 million common shares outstanding as of April 30, 2026;

(d)     Hertz regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on national circuits of major newswire services, the Internet, and other wide-ranging public disclosures; and

(e)     unexpected material news about Hertz was rapidly reflected in and incorporated into prices for shares of Hertz common stock during the Class Period.

33.     As a result of the foregoing, the market for Hertz common stock promptly digested current information regarding Hertz from all publicly available sources and reflected such information in the price of the stock. Under these circumstances, all purchasers of Hertz common stock during the Class Period suffered similar injury through their purchases of Hertz common stock at artificially inflated prices and a presumption of reliance applies.

34.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on defendants' material misstatements and/or omissions. Because this action involves defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects – information that defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

35.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pled herein were not

identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pled herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false and/or the forward-looking statement was authorized and/or approved by an executive officer of Hertz who knew that those statements were false when made.

## COUNT I

### For Violation of §10(b) of the 1934 Act
### and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

36.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

37.     During the Class Period, the Defendants named herein disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

38.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     employed devices, schemes, and artifices to defraud;

(b)     made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Hertz common stock during the Class Period.

39.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Hertz common stock. Plaintiff and the Class would not have purchased Hertz common stock at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by defendants' misleading statements.

40.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Hertz common stock during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against the Individual Defendants

41.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

42.     During the Class Period, the Individual Defendants acted as controlling persons of Hertz within the meaning of §20(a) of the 1934 Act. By virtue of their positions and their power to control public statements about Hertz, ownership of Hertz stock, and relationships with the Company, the Individual Defendants had the power and ability to control the actions of Hertz and its employees.

43.     By reason of such conduct, the Individual Defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff, and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

- 13 -

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Awarding such equitable/injunctive or other relief as the Court may deem just and proper, including permitting any putative Class members to exclude themselves by requesting exclusion through noticed procedures.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED:  July 24, 2026

**DWOSKIN WASDIN LLP**
ERIC S. DWOSKIN
Florida Bar No. 112459

_____*s/ Eric S. Dwoskin*_____
ERIC S. DWOSKIN

433 Plaza Real, Suite 275
Boca Raton, FL 33432
Telephone:  (561) 849-8060
edwoskin@dwowas.com

**SCHALL, BROWN & SCHWARTZ, LLP**
ANDREW J. BROWN
BRIAN O. O'MARA
501 W. Broadway, Suite 1490
San Diego, CA 92101
Telephone: (310) 301-3335
andrew@schallfirm.com
omara@schallfirm.com

-and-

**SCHALL, BROWN & SCHWARTZ, LLP**
BRIAN SCHALL
ADAM ROSEN
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
brian@schallfirm.com
adam@schallfirm.com

*Attorneys for Plaintiff*

- 14 -